### STATE OF FLORIDA v. MARTIN
No. 998-943 V
County Court, Hillsborough County
November 30, 1981

A. Thomas Mihok, for defendant.

William Taylor, Assistant State Attorney, for plaintiff.

PAUL DISNEY ELLIOTT, County Court.

The instant case arises from a stop founded on probable cause made upon Douglas F. Martin by Tampa Police Department Officer E. E. Walters on July 6, 1981 at 11:50 P.M. at or near Tampa Street and Kennedy Boulevard, Tampa, Florida. Upon closer contact with Martin Officer Walters suspected that Martin might be under the influence of alcoholic beverages to the extent that his normal faculties were impaired. A field sobriety test was thereafter administered which confirmed Officer Walters suspicions. Martin was then arrested and taken to Central

Booking where a licensed breathalyzer operator performed an approved breath test at 12:51 A.M., July 7, 1981, using a Model 900-A Smith and Wesson Breathalyzer. The results of said breath test was a 0.13% blood alcohol content by weight. No breath, blood or other sample was retained by the State nor was Martin advised of his right to have a blood sample drawn for testing at some future date.

On July 13, 1981 Martin filed his MOTION TO DISMISS and MOTION IN LIMINIE OR IN THE ALTERNATIVE MOTION TO SUPPRESS after learning that no blood or breath sample was retained for independent future testing.

Martin's MOTION TO DISMISS alleged that Officer Walters had no probable cause to arrest him because he did not see him commit a traffic violation.

Martin's MOTION IN LIMINIE OR IN THE ALTERNATIVE MOTION TO SUPPRESS raised six separate grounds. First, that Officer Walters had no reasonable cause to believe that Martin was intoxicated; Second, that the breathalyzer machine was not in correct operating condition; Third, that the breathalyzer test was not administered according to prescribed laws and rules and at the direction of the arresting officer; Fourth, that the test ampoule did not meet the required chemical content; Fifth, that the breathalyzer operator failed to meet prescribed standards; and Sixth, that Martin's constitutional right of confrontation was violated. Further, in Martin's memorandum he asserts that his State and Federal constitutional rights of equal protection and due process were violated as a result of the State's failure to preserve a sample of his breath, blood, or other substance for future independent testing by him.

Martin's MOTION IN LIMINIE/TO SUPPRESS and Memorandum present novel and important issues; the six grounds raised in his motion, however, are without merit. See e.g., *Schmerber v. California,* 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed2d 908 (1966). Nonetheless, the Due Process issue raised in his Memorandum is meritorious and is dispositive of the issues at bar.

The question then becomes whether the State's failure to preserve breath samples for the defendant's future testing denied him his constitutional right to due process. This is the same due process issue that was presented in *COOK v. FLORIDA,* No. 80-1276-AP-01, in the Circuit Court of Sarasota County decided by Judge Stephen L. Dakan on February 26, 1981, sitting in an Appellate capacity.

Thorough and extensive testimony was presented at several hearings conducted over a number of weeks by both parties. The witnesses

included the defendant's expert, Dale C. Wingeleth, Ph.D, the State's expert, Kurt M. Dubowski, Ph.D, both well respected and highly qualified forensic toxicologists and Officer E. E. Walters of the City of Tampa Police Department. The witnesses in the case at bar were the most knowledgable and experienced available in their field. Interestingly, they were in general agreement on all significant points.

Based upon the testimony and evidence presented the court finds:

1. That at the time that the breathalyzer test was administered to the defendant a separate sample of his breath was not retained by the State nor was he advised of his right to have a blood sample drawn for future testing to corroborate or challenge the results obtained by the State in its test.

2. That there are scientifically reliable systems available for collecting and preserving breath samples for future testing at modest expense.

3. That the results secured by these alternative systems are generally accepted in the scientific community and are reliable.

4. That the State of Florida has, in fact, approved the use of one of these systems, i.e., the *Indium Crimper.* (Rules of the Department of Health and Rehabilitative Services, Health Programs, Chapter 10 D-42.24(5) ).

5. That the method for determining the blood alcohol content utilized in the case at bar was selected by the State with knowledge that there would be no evidence, i.e., breath, preserved for future independent testing by the defendant.

6. That the breath testing method used in the case at bar is an indirect method of testing for alcohol in the blood (the defendant's blood being the best substance to test) and that the breath analysis method at bar was intentionally selected by the State despite the fact that involuntary extraction of blood from a defendant is constitutionally sanctioned. *Schmerber v. California,* supra.

7. That the retained samples under the alternative systems are relatively small and can be stored for reasonably long periods of time, up to one year, and/or be shipped without affecting the subsequent independent testing.

8. That a breath sample is material to the defendant's guilt or innocence considering the presumptions of intoxication noted in Section 322.262, Florida Statutes (1981).

9. That 'the defendant had no choice but to take the breathalyzer test offered to him and no other breath test was given on another machine to corroborate the results of the first test.

A defendant is entitled to a fair trial and the right to a fair trial is the very essence of due process. Generally the due process test in cases of this nature is: (1) Whether the evidence was destroyed or suppressed by the State; (2) Whether the evidence is material to the defendant's case; and (3) in some cases whether the evidence is exculpatory.

Prior to the advent of the breathalyzer sufficient quantities of blood were withdrawn from a defendant for both the State and the defendant to test. In the instant case the State collected no more evidence, i.e., breath, than it needed and none was collected or preserved for the defendant to later test. The breathalyzer system, though somewhat less cumbersome to implement than blood collection or withdrawal, was intentionally selected by the State knowing that no evidence would remain for the defendant to test. Considering that the breath is material to the defendant's case and that systems are presently available at modest expense to preserve breath samples for future testing, failure to collect and preserve a sample of the defendant's breath for later testing amounts to State action suppression. The State, of course, has no obligation to give any blood alcohol test. However, fundamental fairness requires that when the State does offer such tests its selection of an evidence collection system which preserves a sample in one case (blood) but not in another (breath) must bear a rational relation to some legitimate State interest. *McLaughlin v. Florida,* 379 U.S. 84, 85 S.Ct. 283, 13 L.Ed2d 222 (1964). The trial of a criminal case is not a game of fox and hounds in which the State attempts to outwit and trap a quarry. *Giles v. Maryland,* 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967) (Fortas, J. concurring). It is, instead, a sober search for truth, in which not only the resources of the defendant but those readily available to the State must be put to work in an aid of that search. The failure of the State to collect and preserve evidence, when those acts can be accomplished as a mere incident to a procedure routinely performed by the State's agents, is tantamount to suppressing that evidence. It is encumbent upon the State to employ regular procedures to preserve evidence which a State agent, in the regular performance of his duties, could reasonably foresee might be favorable to the accused. *U.S. v. Bryant,* 142 U.S.App.D.C. 132, 142 n.21, 439 F.2d 642, 652 n.21 (D.C.Cir. 1971). In addition to *Cook v. Florida,* supra, the issue presented herein has been decided by the highest courts of two other states in favor of the defendant. *Baca v. Smith,* 604 P.2d 617 (Ariz. 1980), *Garcia v. District Court,* 589 P.2d 924 (Colo. 1979). The evidence herein and the reasoning of those three

cases support this courts position. It is therefore ORDERED AND ADJUDGED

1. That the Defendant's MOTION TO DISMISS is denied, and

2. That the Defendant's MOTION IN LIMINIE/SUPPRESS is granted because Martin's right to due process under the State and Federal Constitution has been violated and thus the results of the breathalyzer test given to him shall not be admissable at the trial of this cause. Where the State selects a method by which a defendant's blood alcohol content is to be determined it shall collect and preserve for the defendant whatever substance it uses to test, be it blood, breath, saliva or urine. Further, the arresting officer must advise the defendant of his right to a blood test if the State elects to administer a breath test.

The mechanics of implementing this Court's order rests with the executive branch of government and it is not this Court's province to order what particular method to use. This ruling is prospective only from this date and applies only to the parties and those defendants who have filed motions similar to the one decided herein.